MEREDITH DESAUTELS (SBN 259725)
REBEKAH EVENSON (SBN 207825)
BAY AREA LEGAL AID
1735 Telegraph Ave.
Oakland, CA 94608
Telephone: 510-663-4744
Facsimile: 510-663-4740
Email: mdesautels@baylegal.org
Email: revenson@baylegal.org

*Counsel for Plaintiffs Tureko Straughter and K.R.*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TUREKO STRAUGHTER, individually and as the guardian for minor K.R.; and K.R, a minor, by and through his guardian TUREKO STRAUGHTER, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY AND COUNTY OF SAN FRANCISCO, SAN FRANCISCO JUVENILE PROBATION DEPARTMENT, CHIEF OF SAN FRANCISCO JUVENILE PROBATION DEPARTMENT ALLEN NANCE, DEPUTY PROBATION OFFICER SAMUEL NWIGWE, DEPUTY PROBATION OFFICER TONI POWELL, DEPUTY PROBATION OFFICER ROGER GAINEY, and DOES 1-30, inclusive. <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR DAMAGES** <br> (42 U.S.C. Section 1983 and pendent tort claims) <br><br><br> **DEMAND FOR JURY TRIAL** |

1

## INTRODUCTION

1.    This case arises from the unlawful incarceration of K.R., an African-American teenage boy, in San Francisco's juvenile hall. The San Francisco Juvenile Probation Department booked K.R. into the county's locked juvenile facility on Thursday, June 29, 2017, overriding a risk assessment indicating that he should be released. On Friday, June 30, a judge of the San Francisco Superior Court ordered K.R.'s release. Officers of the Juvenile Probation Department received that court order, but failed to release K.R. Instead, the Juvenile Probation Department held K.R. in custody until the following Monday, July 3, when the judge again ordered him to be released.

2.    As a result of the actions by the San Francisco Juvenile Probation Department, K.R. was held against his will in a locked cell, deprived of his freedom, separated from the care and love of his family, and subjected to the control of the custodial officers.

3.    This civil rights and tort action seeks general, special, and punitive damages from Defendants for violating Plaintiffs' rights under the United States Constitution and California state law.

## JURISDICTION

4.    This action arises under 42 U.S.C. Section 1983. Jurisdiction is based on 28 U.S.C. Sections 1331 and 1343.

5.    The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S. Section 1367 over the state law claims, which are so related to the federal claims in this action that they form part of the same case or controversy under Article II of the United States Constitution.

## VENUE/INTRADISTRICT ASSIGNEMENT

6.    The claims alleged herein arose in the City and County of San Francisco, State of California. Therefore, venue and assignment are in the United States District Court for the Northern District of California, San Francisco or Oakland Divisions. 28 U.S.C. § 1391(b)(2); Civil L.R. 3-2(d).

## PARTIES

A.    **Plaintiffs**

7.    Plaintiff TUREKO STRAUGHTER is the mother of K.R. and at the time of the incident alleged herein resided with K.R. and her two other sons in Oakland, California.

8.      Plaintiff K.R. is an African-American minor who was fifteen years old at the time of the incident alleged herein. He brings this action by and through his parent and guardian, Tureko Straughter. He is identified in this lawsuit by his initials pursuant to Federal Rules of Civil Procedure 5.2(a)(3).

**B.      Defendants**

9.      Defendant CITY AND COUNTY OF SAN FRANCISCO is, and at all times herein mentioned was, a municipal corporation duly organized and existing under the laws of the State of California.

10.     Defendant SAN FRANCISCO JUVENILE PROBATION DEPARTMENT is a municipal department operated by and under the authority of Defendant CITY AND COUNTY OF SAN FRANCISCO.

11.     Defendant ALLEN NANCE is, and at all times relevant herein was, the Chief of the SAN FRANCISCO JUVENILE PROBATION DEPARTMENT and, as such, was the policymaker for Defendant CITY AND COUNTY OF SAN FRANCISCO on matters related to the SAN FRANCISCO JUVENILE PROBATION DEPARTMENT. At all times herein mentioned, Defendant NANCE was acting under color of law and within the scope of his employment with the Defendant CITY AND COUNTY OF SAN FRANCISCO. Defendant NANCE is sued in his official and individual capacities.

12.     Upon information and belief, Defendant SAM NWIGWE was at all times relevant herein a deputy probation officer with the SAN FRANCISCO JUVENILE PROBATION DEPARTMENT for the CITY AND COUNTY OF SAN FRANCISCO, and was acting under color of law and within the scope of his employment with the Defendant CITY AND COUNTY OF SAN FRANCISCO. He is sued in his individual capacity.

13.     Upon information and belief, Defendant TONI POWELL was at all times relevant herein a supervising probation officer with the SAN FRANCISCO JUVENILE PROBATION DEPARTMENT for the CITY AND COUNTY OF SAN FRANCISCO, and was acting under color of law and within the scope of her employment with the Defendant CITY AND COUNTY OF SAN FRANCISCO. She is sued in her individual capacity.

14.     Upon information and belief, Defendant ROGER GAINEY was at all times relevant herein a supervising probation officer with the SAN FRANCISCO JUVENILE PROBATION

1  DEPARTMENT for the CITY AND COUNTY OF SAN FRANCISCO, and was acting under color of

2  law and within the scope of his employment with the Defendant CITY AND COUNTY OF SAN

3  FRANCISCO. He is sued in his individual capacity.

4      15.    Defendants DOES 1 through 30 are persons or entities whose true names and capacities

5  are presently unknown to Plaintiffs, who therefore sue these Defendants by fictitious names. Plaintiffs

6  are informed and believe, and on that basis allege, that each of the DOE Defendants was an agent or

7  employee of one or more of the named Defendants, and was acting within the course and scope of said

8  agency or employment and under color of state law. Plaintiffs are further informed and believe, and

9  based thereon allege, that each of the DOE Defendants is legally responsible in some manner for the

10  occurrences herein alleged. All allegations in this Complaint that refer to the named Defendants refer in

11  like manner to those Defendants identified as DOES 1 through 30, inclusive. Plaintiffs will amend this

12  Complaint to allege the true names and capacities of the DOE Defendants when they have been

13  ascertained.

14  <u>**ADMINISTRATIVE PREREQUISITES**</u>

15      16.    Plaintiffs each filed a claim with the City and County of San Francisco on November 29,

16  2017. The City and County of San Francisco denied both claims on January 10, 2018. Plaintiffs have

17  exhausted all administrative remedies pursuant to California Government Code Section 910.

18  <u>**FACTUAL AND STATUTORY BACKGROUND**</u>

19  **A.    Statutory and Policy Framework for Pre-Trial Custody of Minors**

20      17.    In California, when a minor is arrested and the arresting officer decides not to release the

21  minor, the officer delivers the minor to the probation officer of the county. Cal. Welf. & Inst. Code §

22  626(d).

23      18.    Upon delivery of a minor, the probation officer must immediately investigate the

24  circumstances of the minor and the facts surrounding his or her being taken into custody. Cal. Welf. &

25  Inst. Code § 628(a)(1).

26      19.    California law presumes that a minor shall be released pretrial, unless certain

27  circumstances are present. Specifically, Welfare and Institutions Code Section 628, subsection (a),

28  paragraph (1), states that the probation officer "***shall immediately release*** the minor to the custody of his

or her parent, legal guardian, or responsible adult," unless it can be demonstrated both that continuance in the home is contrary to the minor's welfare, and that one of the following three conditions exists: "(A) Continued detention of the minor is a matter of immediate and urgent necessity for the protection of the minor or reasonable necessity for the protection of the person or property of another. (B) The minor is likely to flee the jurisdiction of the court. (C) The minor has violated an order of the juvenile court." *See* Cal. Welf. & Inst. Code § 628(a)(1) (emphasis added).

20.     A minor who is held in custody must be brought before a juvenile court judge for a detention hearing before the end of the next judicial day after a petition is filed declaring the minor a ward or dependent child. Cal. Welf. & Inst. Code § 632. Minors whose detention hearing will occur after a weekend are entitled to a judicial determination of probable cause prior to the detention hearing. *See Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991) (holding that a probable cause determination made within 48 hours of arrest complies with the Fourth Amendment); *In re Alfredo A.*, 6 Cal. 4th 1212, 1232 (holding that "juvenile arrestees" must be afforded a judicial determination of probable cause for post-arrest detention that continues longer than 72 hours after arrest).

21.     It is the duty of the probation officer to take charge of a minor as ordered by the juvenile court. Cal. Welf. & Inst. Code § 280.

**B.     Unlawful Incarceration of Minor K.R.**

22.     On Thursday, June 29, 2017, minor K.R. was taken into police custody by officers of the San Francisco Police Department on charges related to an auto burglary. Throughout the time period relevant herein, the charges remained unadjudicated.

23.     Following his arrest on June 29, the police officers initially detained K.R. at the Northern Station of the San Francisco Police Department. Upon information and belief, the officers contacted the San Francisco Juvenile Probation Department (hereinafter "Juvenile Probation Department"). The officers spoke to the on-duty officer, who told them that K.R. would be booked at the Juvenile Justice Center, San Francisco's locked juvenile custodial facility. The police officers made contact with K.R.'s mother, Tureko Straughter, and notified her that K.R. would be booked into custody, then transported K.R. to the Juvenile Justice Center. Ms. Straughter visited her son at the juvenile custodial facility that night.

24.     Upon information and belief, in the evening of Thursday, June 29 or in the morning of Friday, June 30, Deputy Juvenile Probation Officer Nwigwe completed a "Detention Risk Instrument" for K.R. This instrument is the standard instrument used by the Juvenile Probation Department for determining whether or not to detain in juvenile hall youth who are arrested in San Francisco. The instrument provides for scoring upon a set of factors, with the following three options available, depending on the score: 1) 0-7 points: do not book, release within four hours; 2) 8-10 points: release with conditions; and 3) 11+ points: detain.

25.     Upon information and belief, the instrument also permits the probation officer to override the scoring system and detain a youth even if the point score falls below the threshold for detention. The instrument permits an override and detention of a youth who would otherwise be released if the officer finds any of the six indicated factors: 1) Parent, guardian or responsible relative cannot be located; 2) Parent, guardian or responsible relative unwilling to accept custody of minor; 3) Youth refused to return home; 4) Violation of Home Detention; 5) Violation of Probation; and 6) Other. An override must be approved by a supervisor of the Juvenile Probation Department.

26.     Upon information and belief, Officer Nwigwe scored K.R. at 6 points, a score for which the instrument indicates that a minor should not be booked in juvenile hall at all, but instead released within four hours. For K.R., Officer Nwigwe elected to override the instrument score and detain him. Officer Nwigwe selected the "Other" category as the basis for the override, and indicated that the reason for the detention was that the minor lived outside of the county. Supervising Probation Officer Toni Powell approved of the detention override for K.R.

27.     At the time of his detention, K.R. resided in the neighboring city of Oakland, at an address less than 15 miles from the juvenile detention facility. Also at the time of this incident, K.R. was (and still is) attending high school in San Francisco, and his mother Ms. Straughter was (and still is) working in San Francisco. Ms. Straughter had also been immediately responsive to the police and the Juvenile Probation Department officers after K.R. was taken into custody.

28.     Upon information and belief, in the morning of Friday, June 30, Officer Nwigwe submitted a "Probable Cause" request to the juvenile division of the San Francisco Superior Court. Such a "Probable Cause" request seeks judicial review of the Juvenile Probation Department's decision to

detain a minor. Officer Nwigwe attached two documents to the Probable Cause request: the incident report from the San Francisco Police Department, and the Detention Risk Instrument.

29.   On Friday, June 30, the Honorable Braden C. Woods, a judge in the juvenile division of the San Francisco Superior Court, having reviewed the Probable Cause request and the attached documents in K.R.'s case, made a finding that there was not sufficient probable cause to detain K.R. and ordered his release.

30.   Upon information and belief, Judge Woods signed this release order at 2:10 p.m. on Friday, June 30, 2017. The court clerk's office notified the Juvenile Probation Department that the court's decision was available for pick-up, and an officer of the Juvenile Probation Department picked up the order from the clerk's office at approximately 2:30 p.m. on Friday, June 30. Upon information and belief, Officer Nwigwe received the court's decision and release order by no later than 4:00 p.m. that same day.

31.   Despite having received the court's release order, the Juvenile Probation Department did not release K.R. The Juvenile Probation Department held K.R. in custody until approximately 12:00 p.m. on Monday, July 1, 2017.

32.   While he was held in custody, K.R. was confined in a locked cell, with limited time outside of his cell. K.R. had little appetite and he missed his family.  During K.R's incarceration, Ms. Straughter was allowed only restricted contact with her son K.R. She was able to visit him three times, the maximum possible number of visits, and each time they spent only approximately 45 minutes together. The visits were in public, under the supervision of the custodial officers, and Ms. Straughter and K.R. were permitted minimal physical contact.

33.   Upon information and belief, at no point during K.R.'s incarceration did officers of the Juvenile Probation Department take any steps towards complying with the court order to release K.R.

34.   After the court issued its release order, Officer Nwigwe continued to work on K.R.'s case as if no release order had been issued by preparing to present K.R.'s case to the court on Monday, July 3, for a detention hearing. Specifically, Office Nwigwe prepared a detention report and recommendation that was approved by Supervising Probation Officer Roger Gainey, and that continued to recommend that K.R. remain detained.

35.     Upon information and belief, Officer Nwigwe's detention report was based in part on an investigation conducted in the afternoon of Friday, June 30, after he had submitted his detention recommendation and Probable Cause request to the court. Officer Nwigwe spoke with an individual at the Alameda County Probation Department, and learned of a record for a minor with the same last name, address, and birthdate, but different first name. This minor had been cited in Oakland in January 2017, but the charge was dropped for insufficient evidence.

36.     In fact, the minor who had been cited in Oakland was K.R.'s twin brother.

37.     Upon information and belief, Officer Nwigwe used the information received from Alameda County to conclude that K.R. had been using an alias, and changed the records for K.R. to reflect that his true name was the name of the minor who had had prior police contact in Alameda County (K.R.'s twin brother).

38.     On Friday, June 30, Ms. Straughter received a call from Officer Nwigwe, who advised her that K.R.'s detention hearing would be held on Monday, July 3. Officer Nwigwe did not ask Ms. Straughter about K.R.'s true name or make any attempt to investigate any contacts K.R. may have had with law enforcement in Alameda County. Next, Ms. Straughter received a call from Deputy Public Defender Gregory Feldman with the San Francisco Public Defender's Office, who also advised Ms. Straughter about the detention hearing. During this call, Mr. Feldman referred to K.R. by his brother's name. Ms. Straughter pointed out the mistake, to which Mr. Feldman responded that they would address the issue at the detention hearing on Monday. Each time that Ms. Straughter visited K.R. over the weekend, he was listed under his brother's name.

39.     At approximately 9:44 a.m. on Monday, June 30, K.R.'s case was called for a detention hearing in Department 3 of the juvenile division of the San Francisco Superior Court, before Judge Woods, presiding. Present at the hearing were: a court officer with the Juvenile Probation Department, Officer Nwigwe, Xochitl Carrion, deputy district attorney with the San Francisco District Attorney's Office, Gregory Feldman, deputy public defender with the San Francisco Public Defender's Office, K.R., Ms. Straughter, and K.R.'s aunt, Tanesha Wilson.

40.     At the detention hearing, Judge Woods stated on the record K.R.'s true name, and acknowledged that the record from the incident in Oakland did not belong to K.R.

41.     Judge Woods also stated on the record that he had ordered K.R. to be released on the prior Friday. Judge Woods indicated that, prior to issuing that order, he had reviewed the Juvenile Probation Department's recommendation that K.R. be detained because he lives outside of San Francisco, in Alameda County. Judge Woods then noted that K.R.'s mother was responsive to both the San Francisco Police Department and the Juvenile Probation Department when contacted. Judge Woods then noted that "Alameda County, 12 miles away across the bridge" was the sole basis for the override indicated by the Juvenile Probation Department. Judge Woods stated that, even taking into account the experience of the supervisor in using the Detention Risk Instrument, the court had ordered K.R. to be released from custody.

42.     Judge Woods also stated on the record that he had confirmed with his staff in the court clerk's office that the Juvenile Probation Department had retrieved the release order by 2:30 p.m. on Friday, June 30. Officer Nwigwe stated to the court that he had received the order around 4:00 p.m. When asked by the court why K.R. had not been released, Officer Nwigwe stated: "Your honor, it was my decision. I didn't see the insufficient evidence because I knew that the Court overrules whatever we do." When questioned again, Officer Nwigwe stated: "I saw the signature. I never read it properly."

43.     Judge Woods then declined to proceed with the detention hearing, instead treating the hearing as a first jurisdictional hearing. Judge Woods ordered release of K.R. to his mother per the June 30 release order. K.R. was thereafter released from custody sometime in the afternoon on July 3, 2017.

44.     As a result of his incarceration, K.R. was deprived of his freedom and separated from the care and love of his family. He suffered physical discomfort and was subject to the custodial control of the officers. K.R. was also mentally and emotionally injured as a result of his unlawful incarceration, which caused mental anguish, emotional distress, feelings of unjust treatment, reputational harm, fear, anxiety, humiliation, and trauma. Ms. Straughter suffered the loss of her rights as a parent to the care, custody, and companionship of her child, the loss of his services as a family member, emotional distress resulting from his unlawful incarceration, and expenses incurred in vindicating her parental rights.

**C.      Custom and Practice of the San Francisco Juvenile Probation Department**

45.     Upon information and belief, the Juvenile Probation Department has a longstanding practice and/or custom of treating youth differently with regard to detention decisions based on the

youth's residence outside of the City and County of San Francisco. Such practice and/or custom has been approved and/or ratified by individuals with policymaking authority within the Juvenile Probation Department.

46.     Upon information and belief, the Juvenile Probation Department has also failed to provide appropriate and necessary training to its employees regarding appropriate, constitutional bases for overriding the detention instrument and/or complying with judicial orders.

**D.     Harm from the Practices of the San Francisco Juvenile Probation Department**

47.     Incarceration has a uniquely harmful impact on developing adolescents, whose brains have not yet fully matured.[1]

48.     Incarceration of a young person runs in direct conflict with the factors necessary for healthy brain development by separating him from trusted adults, exposing him to negative peer influences within the custodial facility, and extinguishing his autonomy and access to pro-social activities.[2]

49.     Incarceration of youth is associated with a range of immediate harms, including exacerbation of mental health issues, increased risk of self-harm,[3] and educational losses in reading and

---

[1] NATIONAL RESEARCH COUNCIL, REFORMING JUVENILE JUSTICE: A DEVELOPMENTAL APPROACH 91-92 (Committee on Assessing Juvenile Justice Reform, Richard J. Bonnie, Robert L. Johnson, Betty M. Chemers, and Julie A. Schuck, Eds. Committee on Law and Justice, Division of Behavioral and Social Sciences and Education, The National Academies Press 2013), http://www.njjn.org/uploads/digital-library/Reforming_JuvJustice_NationalAcademySciences.pdf.
[2] *See id.* (The National Research Council identified three factors that promote healthy psychological development for young people: 1) the presence of a parent or parent-like adult who is involved with and concerned about the young person's development; 2) "inclusion in a peer group that values and models prosocial behavior and academic success;" and 3) opportunities to exercise "autonomous decision making and critical thinking" through activities and other pro-social settings.)
[3] BARRY HOLMAN AND JASON ZIEDENBERG, JUSTICE POLICY INSTITUTE, THE DANGERS OF DETENTION; THE IMPACT OF INCARCERATING YOUTH IN DETENTION AND OTHER SECURE FACILITIES 8-9 (2006), http://www.justicepolicy.org/images/upload/06-11_rep_dangersofdetention_jj.pdf.

math.[4] Incarceration exposes youth to negative peer influences, termed the "peer contagion" effect, with placement in an institution resulting in increased criminogenic behaviors among youth.[5]

50.     Incarceration is also associated with poor criminological outcomes, such that even 2-3 days of pretrial detention can lead to increased rates of later recidivism.[6] Juvenile incarceration in particular results in lower rates of high school graduation and greater rates of adult incarceration.[7]

51.     Incarceration of youth is also associated with long-term harms, including poor physical and mental health outcomes as an adult. Even short periods of confinement have been associated with higher rates of depression later in life.[8] Youth who serve time in detention also suffer poor psychosocial outcomes more than a decade after the incarceration occurred.[9]

52.     In short, recent scientific research has established what many have always known—that incarceration of young people carries the risk of significant harm. Any incarceration of a minor must be viewed through this lens.

---

[4] YOUTH LAW CENTER, EDUCATIONAL INJUSTICE: BARRIERS TO ACHIEVEMENT AND HIGHER EDUCATION FOR YOUTH IN CALIFORNIA JUVENILE COURT SCHOOLS 14-15 (2016), http://www.ylc.org/wp/wp-content/uploads/EDUCATIONAL%20INJUSTICE.pdf.

[5] Uberto Gatti Richard E. Tremblay, Frank Vitaro, Iatrogenic Effect of Juvenile Justice, 50:8 J. CHILD PSYCHOL. & PSYCHIATRY 996-97 (2009), https://pdfs.semanticscholar.org/a2d3/c794ac4724907d918f90f1989716becff3fe.pdf.

[6] Christopher T. Lowenkamp, Marie Van Nostrand, And Alexander Holsinger, The Hidden Costs of Pretrial Detention 19-20 (Arnold Foundation, 2013), http://www.arnoldfoundation.org/wp-content/uploads/2014/02/LJAF_Report_hidden-costs_FNL.pdf

[7] Anna Aizer and Joseph J. Doyle, Jr., Juvenile Incarceration, Human Capital, and Future Crime: Evidence from Randomly Assigned Judges, 130:2 Q. J. OF ECON. 759-803 (2015), https://doi.org/10.1093/qje/qjv003. Related working paper available electronically: Aizer and Doyle, NATIONAL BUREAU OF ECONOMIC RESEARCH Working Paper 19102 3 (2013), http://www.nber.org/papers/w19102.pdf.

[8] Elizabeth S. Barnert, Rebecca Dudovitz, Bergen B. Nelson, Tumaini R. Coker, Christopher Biely, Ning Li, Paul J. Chung, How Does Incarcerating Young People Affect Adult Health Outcomes?, 139:2 PEDIATRICS 7 (2017), http://pediatrics.aappublications.org/content/pediatrics/139/2/e20162624.full.pdf.

[9] Karen M. Abram, Nicole M. Azores-Gococo, Kristin M. Emanuel et al, *Sex and Racial/Ethnic Differences in Positive Outcomes in Delinquent Youth After Detention: A 12-Year Longitudinal Study*, 171:2 JAMA PEDIATRICS  123-132, http://jamanetwork.com/journals/jamapediatrics/article-abstract/2592310.

# CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983

**Violation of K.R.'s constitutional right against unlawful incarceration**

**without due process.**

**(By K.R. Against Defendants Nwigwe, Powell, Gainey, DOES 1-30)**

53. Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

54. In doing the acts complained of in this Complaint, Defendants Nwigwe, Powell, Gainey, and/or DOES 1-30, individually and/or while acting in concert with one another, did act under color of state law to cause Plaintiff K.R. to be incarcerated when there was no legal basis to detain him. Said Defendants continued to detain Plaintiff K.R. after it was known or should have been known that he was entitled to release.

55. The unlawful incarceration of Plaintiff K.R. was done consciously and with deliberate indifference to K.R.'s constitutional right to liberty. The Defendant officers' failure to comply with a court order to release a teenage boy, causing him to be held in locked custody for days without a lawful basis, shocks the conscience. Such conduct deprived Plaintiff K.R. of his liberty rights guaranteed under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

56. As a result of the violation of his rights under the Fourteenth Amendment to the United States Constitution by said Defendants, Plaintiff K.R. suffered the injuries and/or damages as alleged in this Complaint.

57. Upon information and belief, the conduct of Defendants Nwigwe, Powell, Gainey, and/or DOES 1-30 was intentional, willful, wanton, malicious, oppressive, fraudulent, and/or done with a conscious and/or reckless disregard for the rights of Plaintiff K.R. As a result, Plaintiff is entitled to an award of punitive and exemplary damages against said Defendants in amounts to be determined according to proof.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

COMPLAINT

**SECOND CAUSE OF ACTION**

**42 U.S.C. § 1983**

**Violation of K.R.'s constitutional right against unreasonable seizure.**

**(By K.R. Against Defendants Nwigwe, Powell, Gainey, DOES 1-30)**

58.     Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

59.     In doing the acts complained of in this Complaint, Defendants Nwigwe, Powell, Gainey, and/or DOES 1-30, individually and/or while acting in concert with one another, did act under color of state law to cause Plaintiff K.R. to be incarcerated after there was no longer a legal basis to detain him. Said Defendants continued to detain Plaintiff K.R. after it was known or should have been known that he was entitled to release.

60.     The unlawful incarceration of K.R. was unreasonable and without probable cause. Upon the order of the court to release K.R., the legal basis for detaining K.R. was extinguished. Subsequent incarceration of K.R. after receipt of the court's order constituted a new seizure under color of state law by Defendants Nwigwe, Powell, Gainey, and/or DOES 1-30, individually and/or while acting in concert with one another. This "re-seizure" was unsupported by probable cause and was objectively unreasonable. Such conduct deprived Plaintiff K.R. of his right against unreasonable seizure guaranteed under the Fourth Amendment to the United States Constitution.

61.     As a result of the violation of his rights under the Fourth Amendment to the United States Constitution by said Defendants, Plaintiff K.R. suffered the injuries and/or damages as alleged in this Complaint.

62.     Upon information and belief, the conduct of Defendants Nwigwe, Powell, Gainey, and/or DOES 1-30 was intentional, willful, wanton, malicious, oppressive, fraudulent, and/or done with a conscious and/or reckless disregard for the rights of Plaintiff K.R. As a result, Plaintiff is entitled to an award of punitive and exemplary damages against said Defendants in amounts to be determined according to proof.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**THIRD CAUSE OF ACTION**

**42 U.S.C. § 1983**

**Violation of Tureko Straughter's and K.R.'s constitutional rights to familial association.**

**(By Tureko Straughter and K.R., Each Individually, Against Defendants Nwigwe, Powell, Gainey, DOES 1-30)**

63.     Plaintiffs incorporate by reference all of the above allegations as though fully set forth herein.

64.     In doing the acts complained of in this Complaint, Defendants Nwigwe, Powell, Gainey, and/or DOES 1-30, individually and/or while acting in concert with one another, did act under color of state law to interfere without due process of law with Plaintiff Straughter's fundamental liberty interest in companionship and society with her child, and Plaintiff K.R.'s fundamental liberty interest in his relationship with his mother. In so acting, said Defendants were responsible for depriving Plaintiffs Straughter and K.R. of their rights of familial association guaranteed by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

65.     Defendants Nwigwe, Powell, Gainey, and/or DOES 1-30 interfered with Plaintiffs' rights to familial association by incarcerating K.R. is a locked custodial facility for days without Ms. Straughter's consent and without a lawful basis for incarcerating him. This incarceration of K.R. by said Defendants occurred after it was known or should have been known that K.R. was entitled to release. During this time, said Defendants denied Ms. Straughter and K.R. each other's companionship, not allowing them to visit with the time and privacy needed to bond as family. Such unwarranted interference with Plaintiff Straughter's and K.R.'s right to familial association shocks the conscience, as the conduct of the Defendant officers was conscious of and/or deliberately indifferent to the unlawful separation of Plaintiffs Straughter and K.R.

66.     As a result of the violation of Plaintiffs' rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution by said Defendants, Plaintiffs Straughter and K.R. suffered the injuries and/or damages as alleged in this Complaint.

67.     Upon information and belief, the conduct of Defendants Nwigwe, Powell, Gainey, and/or DOES 1-30 was intentional, willful, wanton, malicious, oppressive, fraudulent, and/or done with a

conscious and/or reckless disregard for the rights of Plaintiffs Straughter and K.R. As a result, Plaintiffs are entitled to an award of punitive and exemplary damages against said Defendants in amounts to be determined according to proof.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### 42 U.S.C. § 1983

### Violation of K.R.'s constitutional right to equal protection.

### (By K.R. Against All Defendants)

68.     Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

69.     In doing the acts complained of in this Complaint, Defendants Nwigwe, Powell, Gainey, and/or DOES 1-30, individually and/or while acting in concert with one another, did act under color of state law to cause Plaintiff K.R. to be incarcerated pre-trial because his residence at the time was outside of the City and County of San Francisco. Said Defendants determined, through their statutorily required investigation into K.R.'s circumstances, that K.R. should be released pretrial without any release conditions. Said Defendants then overrode the release determination, based on the fact that at the time Plaintiff K.R. resided in the neighboring county of Alameda. Said Defendants maintained their incarceration of K.R. based on his county of residence even after a judge ordered him released.

70.     Such conduct violates Plaintiff K.R.'s right to equal protection, as guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Defendants Nwigwe, Powell, Gainey, and/or DOES 1-30, individually and/or while acting in concert with one another, caused Plaintiff K.R. to be treated differently than other similarly situated minors whose circumstances also warrant pretrial release but who reside within the City and County of San Francisco. The basis for K.R.'s differential treatment was his residence in a county outside of San Francisco.

71.     The differential treatment of K.R. based on his county of residence burdened his fundamental right to liberty. On the basis of his county of residence, Defendants Nwigwe, Powell, Gainey, and/or DOES 1-30, caused K.R. to be incarcerated when other similarly situated minors residing in San Francisco are released. Such differential treatment of youth residing outside of San Francisco

1    does not serve a compelling or legitimate state interest, nor is it narrowly tailored or rationally related to

2    such an interest.

3        72.    Upon information and belief, the differential treatment of K.R. based on his county of

4    residence was ratified by, and/or condoned by, and/or acquiesced in by Defendants City and County of

5    San Francisco, San Francisco Juvenile Probation Department, Juvenile Probation Department Chief

6    Nance, and/or DOES 21-30 who are high-ranking and/or policymaking officers within the San Francisco

7    Juvenile Probation Department. Such conduct by said Defendants was done with deliberate indifference

8    to the violation of K.R.'s constitutional right to liberty.

9        73.    Upon information and belief, the differential treatment of youth whose circumstances

10   warrant pretrial release, based on county of residence, amounts to longstanding practice or custom of the

11   San Francisco Juvenile Probation Department, and is so widespread as to constitute standard operating

12   procedure of the department.

13       74.    Upon information and belief, the differential treatment of youth whose circumstances

14   warrant pretrial release, based on county of residence, resulted from a failure properly to train the officer

15   employees regarding the proper, constitutional bases for detention. Such failure to train amounts to

16   deliberate indifference, where there was actual and/or constructive notice that youth were being detained

17   on the unconstitutional basis of county of residence.

18       75.    As a result of the violation of his rights under the Fourteenth Amendment to the United

19   States Constitution by Defendants Nwigwe, Powell, Gainey, City and County of San Francisco, San

20   Francisco Juvenile Probation Department, Juvenile Probation Department Chief Nance, and/or DOES 1-

21   30, Plaintiff K.R. suffered the injuries and/or damages as alleged in this Complaint.

22       76.    Upon information and belief, the conduct of Defendants Nwigwe, Powell, Gainey, and/or

23   DOES 1-30 was intentional, willful, wanton, malicious, oppressive, fraudulent, and/or done with a

24   conscious and/or reckless disregard for the rights of Plaintiff K.R. As a result, Plaintiff is entitled to an

25   award of punitive and exemplary damages against said Defendants in amounts to be determined

26   according to proof.

27       WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

28

COMPLAINT

**FIFTH CAUSE OF ACTION**

**California Civil Code § 52.1**

**(By K.R. Against All Defendants)**

77.     Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

78.     In doing the acts complained of in this Complaint, Defendants Nwigwe, Powell, Gainey, and/or DOES 1-30, individually and/or while acting in concert with one another, did interfere, and attempted interference, by threats, intimidation, and coercion with Plaintiff K.R.'s peaceable exercise and enjoyment of rights secured by the Constitution and laws of the United States and the State of California, including but not limited to: the right to due process of law, the right to be free from unreasonable seizure, and the right to equal protection of the law. Such interference, and attempted interference, was intentional and deliberate. It was achieved through the coercive custodial power of the Juvenile Probation Department, and done with actual and presumed knowledge of the court order for Plaintiff K.R.'s release.

79.     The conduct of said Defendants was done within the course and scope of their employment with Defendants City and County of San Francisco, San Francisco Juvenile Probation Department, and Juvenile Probation Department Chief Nance. Defendants City and County of San Francisco, San Francisco Juvenile Probation Department, and Chief Nance are therefore liable for said conduct under *respondeat superior*.

80.     As a direct and proximate result of said Defendants' violation of Plaintiff K.R.'s constitutional rights, Plaintiff incurred the damages alleged in this Complaint.

81.     Plaintiff is entitled to exemplary damages against said Defendants, in an amount to be determined according to proof, pursuant to California Civil Code Sections 52.1(b) and 52.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**SIXTH CAUSE OF ACTION**

**California Government Code § 815.6**

**Failure to Discharge a Mandatory Duty**

**(By K.R. and Tureko Straughter, Each Individually, Against All Defendants)**

82.     Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

83.     California Government Code Section 815.6 provides for liability against a public entity when:

   a.     The public entity violates a mandatory duty imposed by an enactment.

   b.     The enactment is designed to protect against the kind of injury complained of by the plaintiff.

   c.     The plaintiff is in the class of persons protected by the enactment.

   d.     The violation proximately caused the injury; and

   e.     The public entity did not exercise reasonable diligence in discharging its duty established by the enactment.

84.     An enactment includes a federal or state constitutional provision, statute, charter provision, ordinance, or properly adopted regulation.

85.     Defendants City and County of San Francisco, San Francisco Juvenile Probation Department, Juvenile Probation Department Chief Nance, Officers Nwigwe, Powell, Gainey, and/or DOES 1-30 were under a mandatory duty to release Plaintiff K.R. following the order for release, pursuant to California Welfare and Institutions Code Sections 628 and 280. Section 628 requires that an officer immediately release a minor unless it can be demonstrated upon the evidence before the court that continuance in the home is contrary to the minor's welfare and that one of the statutory conditions is present. Cal. Welf. & Inst. Code § 628(a)(1). Section 280 requires the county, through its probation officer, to take charge of minors as ordered by the court. Cal. Welf. & Inst. Code § 280. Such requirements constitute mandatory duties, enacted by state law, designed to protect minors such as K.R. from unwarranted and unnecessary incarceration and its attendant harms.

86.     Upon information and belief, said Defendants, individually and/or while acting in concert with one another, did not exercise due diligence in discharging its mandatory duty to comply with the court's release order. Said Defendants did not release K.R. after it was known or should have been known that he was entitled to release on Thursday, June 29, and Friday, June 30.

87.     As a result of said Defendants' violation of the mandatory duty to release Plaintiff K.R., both Plaintiff K.R. and Plaintiff Straughter suffered the injuries and/or damages as alleged in this Complaint.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

### False Imprisonment

### (By K.R. Against All Defendants)

88.     Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

89.     Defendant is liable under California law for false imprisonment when:

    a.     There is nonconsensual, intentional confinement of a person,

    b.     Without lawful privilege,

    c.     For an appreciable period of time, however brief.

90.     A jailer can be held liable for false imprisonment if the jailer knew or should have known that the plaintiff's incarceration was unlawful.

91.     In doing the acts complained of in this Complaint, Defendants Nwigwe, Powell, Gainey, and/or DOES 1-30, individually and/or while acting in concert with one another, did act within the scope of their employment to cause Plaintiff K.R. to be incarcerated when there was no legal basis to detain him. Such incarceration was nonconsensual and intention custodial confinement in the locked facility of San Francisco's juvenile hall. The incarceration lacked lawful privilege because it was done on an unconstitutional basis—county of residence—in violation of the right to equal protection. The incarceration also lacked lawful privilege because it contradicted the court's release order, in violation of the rights to due process and against unreasonable seizure.

92.     Said Defendants continued to detain Plaintiff K.R. after it was known or should have been known that he was entitled to release, and therefore Defendants are liable for the tort of false imprisonment. California Government Code Section 820.4 provides: "A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law. Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment."

93.     Pursuant to Government Code Section 815.2, Defendants City and County of San Francisco, San Francisco Juvenile Probation Department, and Juvenile Probation Department Chief Nance are derivatively liable for the torts of their employees—Defendants Nwigwe, Powell, Gainey, and/or DOES 1-30—who were acting within the scope of their employment when they falsely imprisoned Plaintiff K.R.

94.     As a result of said Defendants' false imprisonment of Plaintiff K.R., Plaintiff K.R. suffered the injuries and/or damages as alleged in this Complaint.

95.     Upon information and belief, the conduct of Defendants Nwigwe, Powell, Gainey, and/or DOES 1-30 was intentional, willful, wanton, malicious, oppressive, fraudulent, and/or done with a conscious and/or reckless disregard for the rights of Plaintiff K.R. As a result, Plaintiff is entitled to an award of punitive and exemplary damages against said Defendants in amounts to be determined according to proof.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## EIGHTH CAUSE OF ACTION

### Negligence

### (By K.R. and Tureko Straughter, Each Individually, Against All Defendants)

96.     Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

97.     Defendant is liable under California law for negligence where:

    a.     There is a legal duty to use due care;

    b.     There is a breach of that duty; and

    c.     The breach proximately causes plaintiff's injury.

98.     In doing the acts complained of in this Complaint, Defendants Nwigwe, Powell, Gainey, and/or DOES 1-30, individually and/or while acting in concert with one another, did act within the scope of their employment to cause Plaintiff K.R. to be incarcerated when there was no legal basis to detain him.

COMPLAINT

99.     Said Defendants owed a duty of care to Plaintiffs Straughter and K.R., as said Defendants were the individuals responsible for complying with California Welfare and Institutions Code Sections 628 and 280, to ensure appropriate release of detained minors to their parents or guardians.

100.    The conduct of said Defendants violated their legal duty to Plaintiffs Straughter and K.R. to use due care in employing their custodial power over minors.

101.    Pursuant to California Government Code Section 815.2, Defendants City and County of San Francisco, San Francisco Juvenile Probation Department, and Juvenile Probation Department Chief Nance are derivatively liable for the torts of their employees—Defendants Nwigwe, Powell, Gainey, and/or DOES 1-30—who were acting within the scope of their employment when they negligently incarcerated Plaintiff K.R. without a legal basis.

102.    As a result of Defendants conduct, Plaintiff K.R. suffered the injuries and/or damages as alleged in this Complaint.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

<u>**NINTH CAUSE OF ACTION**</u>

**Interference with Parent-Child Relationship**

**(By Tureko Straughter Against All Defendants)**

103.    Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

104.    In doing the acts complained of in this Complaint, Defendants Nwigwe, Powell, Gainey, and/or DOES 1-30, individually and/or while acting in concert with one another, did act within the scope of their employment to intentionally interfere with Plaintiff Straughter's right to her parent-child relationship by incarcerating K.R. without a lawful basis.

105.    Said Defendants violated Plaintiff Straughter's right to custody of her child by imprisoning her son, Plaintiff K.R., without her consent and without a lawful basis. Such conduct amounts to tortious interference with Plaintiff's Straughter's parental rights because K.R. was taken into custody on public authority, there was a duty to release K.R. once there was no legal basis for the custody, and said Defendants had actual or constructive knowledge that the continued incarceration was without legal privilege.

106.    Pursuant to Government Code Section 815.2, Defendants City and County of San Francisco, San Francisco Juvenile Probation Department, and Juvenile Probation Department Chief Nance are derivatively liable for the torts of their employees —Defendants Nwigwe, Powell, Gainey, and/or DOES 1-30—who were acting within the scope of their employment when they interfered with Ms. Straughter's right to custody of her child.

107.    As a result of Defendants conduct, Plaintiff Straughter suffered the injuries and/or damages as alleged in this Complaint.

108.    Upon information and belief, the conduct of Defendants Nwigwe, Powell, Gainey, and/or DOES 1-30 was intentional, willful, wanton, malicious, oppressive, fraudulent, and/or done with a conscious and/or reckless disregard for the rights of Plaintiff Straughter. As a result, Plaintiff is entitled to an award of punitive and exemplary damages against said Defendants in amounts to be determined according to proof.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## JURY DEMAND

109.    Plaintiffs hereby demand a jury trial in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for relief, as follows:

110.    For general damages in a sum according to proof;

111.    For special damages in a sum according to proof;

112.    For punitive and exemplary damages in a sum according to proof;

113.    For any and all statutory damages allowed by law:

114.    For reasonable attorney's fees pursuant to 42 U.S.C. Section 1988 and California Civil Code Section 52.1(h).

115.    For cost of suit herein incurred; and

116.    For such other and further relief as the Court deems just and proper.

COMPLAINT

1

2    DATED:  June 19, 2018        Respectfully submitted,

3                                       By:  _/s/ *Meredith Desautels Taft*_

4                                     Meredith Desautels Taft

                                     (mdesautels@baylegal.org)

5                                     BAY AREA LEGAL AID

6                                     1735 Telegraph Ave.

                                     Oakland, CA 94608

7                                     Telephone: 510-663-4744

                                     Facsimile: 510-663-4740

8

                                     *Attorney for Plaintiffs*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT